UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MCKESSON CORPORATION,

    Plaintiff,

v.                                                 Case No.: 8:20-cv-02201-WFJ-TGW

BENZER PHARMACY HOLDING LLC,
BENZER NY 1 LLC, et al.,

    Defendants.
_____/

**PLAINTIFF'S MOTION TO DISMISS COUNTS II, III, V, AND VI OF DEFENDANTS' COUNTERCLAIM AND TO PARTIALLY DISMISS OR STRIKE COUNT VII**

    Plaintiff, McKesson Corporation ("McKesson"), pursuant to Federal Rule of Civil Procedure 12(b), moves to dismiss Counts II, III, V, and VI of the Benzer Parties'[1] Counterclaim, and to partially dismiss or strike the allegations in Count VII purporting to state a claim for tortious interference with unidentified customers. (Doc. 16). As discussed more fully below, the Benzer Parties' claims for breach of the implied duty of good faith and fair dealing and declaratory judgment are merely duplicative of their counterclaim for breach of contract. Similarly, Defendants' FDUTPA claim fails because the Benzer Parties fail to allege any deceptive act or practice independent of McKesson's purported contractual duties. Additionally, the Benzer Parties' tort claims are not viable to the extent they are premised on alleged interference with unidentified, existing or potential customers. For these reasons, and

---

[1]     Consistent with Defendants' terminology in the Counterclaim, McKesson refers to Defendants collectively as "the Benzer Parties" herein.

the additional reasons detailed below, McKesson respectfully requests that the Court grant its Motion to Dismiss Counts II, III, V, and VI of the Counterclaim and partially dismiss or strike the allegations in Count VII purporting to state a claim for tortious interference with unidentified prospective customers.

## INTRODUCTION

This case arises from a contract dispute between McKesson Corporation, a pharmaceutical and medical supply distributor, and numerous business entities affiliated with Benzer Pharmacy Holding LLC, which operate an independent pharmacy chain selling prescription and over-the-counter drugs. *See* Doc. 1 ¶¶ 9-23. McKesson claims that certain Defendants breached the agreement between the parties (the "Customer Application")[2] by failing to pay amounts when due, *id*. ¶¶ 20-23, and that certain other Defendants breached the terms of their separate guaranty agreements by failing to ensure timely payment by their affiliated entities under the Customer Application, *see id*. ¶¶ 48-57, 60-70, 73-83.

On October 14, 2020, the Benzer Parties filed their Answer to Plaintiff's Complaint, Affirmative Defenses and Counterclaim. (Doc. 16). Within their Counterclaim, Defendants assert claims for breach of contract (Count I), breach of the implied duty of good faith and fair dealing (Count II), violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count III), accounting (Count IV), declaratory judgment (Count V), tortious interference with business relationship (Count VI), and tortious interference with business expectancy (Count VII).

---

[2]   Although the Benzer Parties refer to the relevant agreement as the "Supply Agreement," McKesson refers to the agreement as the "Customer Application," which is the title of the document. *See* Counterclaim Exhibit A.

For the reasons explained more fully below, Counts II, III, V, and VI of the Benzer Parties' Counterclaim fail to state a claim for relief and should be dismissed in their entirety. Additionally, the allegations in Count VII purporting to state a claim for tortious interference with unidentified prospective customers should be partially dismissed or stricken.

## LEGAL STANDARD

"A motion to dismiss a counterclaim under Rule 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *Maher v. Rockhill Ins. Co.*, No. 2:18-cv-807, 2019 WL 5084093, at *1 (M.D. Fla. Feb. 6, 2019) (internal quotation omitted). To survive a motion to dismiss, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).

"A court considering a Rule 12(b) motion to dismiss is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim." *Watkins v. Bigwood*, No. 18-cv-63035, 2020 WL 1166720, at *3 (S.D. Fla. Mar. 11, 2020) (citing *Wilchombe v. Teevee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005)). Where a contract is central to a party's claims and the contents of the contract are not in dispute, the court may consider the contract upon a motion to dismiss without converting

the motion into one for summary judgment. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

As for a motion to strike under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although "[a] motion to strike is a drastic remedy," a request for damages "must be stricken from the complaint if the allegations therein do not present a factual basis supporting the recovery" of the alleged damages. *Simmons v. Royal Caribbean Cruises, Ltd.*, 423 F. Supp. 3d 1350, 1352 (S.D. Fla. 2019) (internal quotation marks omitted).

## ARGUMENT

The gravamen of the Benzer Parties' counterclaims against McKesson is that McKesson purportedly breached the Customer Application by "changing the payment dates and terms and limiting the Benzer Parties' credit, despite the fact that there had been no material adverse change in the Benzer Parties' financial condition or payment performance and the Benzer Parties had not ceased, or become likely to cease, meeting McKesson's credit requirements." (Counterclaim, Doc. 16 ¶ 27). Based on these allegations, the Benzer Parties attempt to allege several other claims arising from McKesson's purported breach of contract. As detailed below, however, the facts underlying McKesson's alleged breach are insufficient to support the Benzer Parties' tagalong claims for breach of the implied duty of good faith and fair dealing, violation of FDUTPA, declaratory judgment, or tortious interference with Defendants' general business relationships with unidentified customers. Accordingly, McKesson moves to dismiss Counts II, III, V, and VI of Benzer's Counterclaim.

**I.    The Benzer Parties Fail to State a Claim for Breach of the Implied Duty of Good Faith and Fair Dealing.**

4

In Count II, the Benzer Parties allege that, by "unilaterally changing the payment terms to which the parties had previously been operating (sic), McKesson unfairly interfered with the Benzer Parties' receipt of the [Customer Application]'s benefits," and "McKesson's conduct did not comport with the Benzer Parties' reasonable contractual expectations under the [Customer Application]." (Doc. 16 ¶ 32). On these bases, the Benzer Parties assert that McKesson "breached the implied duty of good faith and fair dealing and the Benzer Parties were damaged as a result . . . ." *Id*. ¶ 33.

"Under Florida law, every contract contains an implied covenant of good faith and fair dealing which protects 'the reasonable expectations of the contracting parties in light of their express agreement.'" *Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302, 1314 (S.D. Fla. 2014) (quoting *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012)). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Id*. Additionally, "[a] breach of the implied covenant of good faith and fair dealing claim may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract." *Long v. Murray*, No. 6:09-cv-1320, 2009 WL 4042961, at *6 (M.D. Fla. Nov. 20, 2009). "Thus, a plaintiff may maintain an action for breach of the implied covenant only if it is based on factual allegations different than those underlying the accompanying breach of contract claim." *Id*.

The Benzer Parties' allegations in Count II do not state a claim for breach of the implied duty of good faith and fair dealing. Instead, they merely repeat the allegations in Defendants' breach of contract claim. *See Trief v. American Gen. Life Ins. Co.*, 444 F. Supp. 2d 1268, 1270

5

(S.D. Fla. 2006) ("[I]t appears that Plaintiff's allegations in count II amount to nothing more than a general allegation for breach of contract and are therefore duplicative of count III."). Because the Benzer Parties' breach of implied duty of good faith and fair dealing claim is premised on the same alleged conduct that purportedly breaches the Customer Application, the implied duty claim should be dismissed. *See Amica Mut. Ins. Co. v. Morowitz*, 613 F. Supp. 2d 1358, 1361 (S.D. Fla. 2009) ("[T]he allegations of Count III appear to amount to 'nothing more than a general allegation for breach of contract and are therefore duplicative' of Count II and may be dismissed for this reason.") (quoting *Trief*, 444 F. Supp. 2d at 1270).

## II.   The Benzer Parties Fail to State a Claim under FDUTPA.

FDUTPA "declares unlawful any 'unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008) (quoting Fla. Stat. § 501.204). "A practice is unfair under FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id*. (quotation omitted). "A deceptive practice is one that is likely to mislead consumers." *Id*. Although a FDUTPA claim may arise from a single contract, this principle "does not operate to convert every breach of contract or breach of lease case into a claim under the Act." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 n.2 (Fla. 2003).

The Benzer Parties allege that "[t]he conduct of McKesson, in unilaterally changing the payment and credit terms to which the parties had been operating and agreed, constitutes unfair and deceptive acts and practices which are prohibited and actionable under FDU[TP]A."

(Doc. 16 ¶ 36). However, in order to state a proper FDUTPA claim, the Benzer Parties must allege that the acts underlying the purported contractual dispute are, by themselves, unfair or deceptive. *See Rebman*, 575 F. Supp. 2d at 1279. The Benzer Parties have not done so here, because the Benzer Parties do not assert that McKesson's actions were wrongful outside the context of their contractual obligations. *See C&C Int'l Computers & Consultants, Inc. v. Dell Marketing L.P.*, No. 11-cv-60734, 2011 WL 13217489, at *2 (S.D. Fla. Nov. 7, 2011) (dismissing FDUTPA claim because "Plaintiff improperly challenges acts that allegedly breached the contract, rather than any act underlying that breach"). Accordingly, Count III fails to state a claim and should be dismissed.

### III. The Court Should Dismiss the Benzer Parties' Redundant Declaratory Judgment Claim.

In Count V, the Benzer Parties "dispute that there was any basis, contractual or otherwise, such that McKesson could change the payment terms under the [Customer Application] and properly charge the Benzer Parties the significant amount of late fees it did." (Doc. 16 ¶ 45). Given this dispute, the Benzer Parties allege "[t]here is a bona fide, actual, present practical need for a declaration regarding the parties' rights under the [Customer Application]." *Id*. ¶ 46. The Benzer Parties thus request a declaratory judgment pursuant to the Florida Declaratory Judgment Act, Fla. Stat. § 86.011, *et seq*.

"Under Florida law, whether to grant declaratory judgment remains discretionary with the court, and not the right of a litigant as a matter of course." *Maher*, 2019 WL 5084093, at *2 (internal quotation omitted). "When the issue presented in a declaratory action is the subject of an earlier filed suit in which the plaintiff can secure full relief, the trial court should not consider the request for declaratory relief." *Id*. (citing *Knights Armament Co. v. Optical Sys.*

7

*Tech., Inc.*, 568 F. Supp. 2d 1369, 1374-75 (M.D. Fla. 2008) (declining to entertain declaratory judgment claim because other pending claims rendered declaratory judgment unnecessary)); *see also Soloff v. Lincoln Nat'l Life Ins. Co*., No. 2:09-cv-609, 2010 WL 11506951, at *2 (M.D. Fla. Aug. 18, 2010) ("Though an actual controversy exists, because Plaintiff's original breach of contract claim will address the issues raised in Defendant's counterclaim for declaratory relief and because Defendant has made the same argument as an affirmative defense, the Court, in its discretion, will dismiss the Defendant's counterclaim seeking declaratory relief.") (interpreting the federal Declaratory Judgment Act).

Here, the issues presented by Defendants' counterclaim—whether the Benzer Parties indeed defaulted under the Customer Application and whether McKesson is entitled to collect the total amount it demands—are the subject of McKesson's breach of contract action against the Benzer Parties. The Benzer Parties also allege their own counterclaim for breach of contract against McKesson. Thus, the Benzer Parties' counterclaim for declaratory judgment is redundant of other claims, will necessarily be resolved in the underlying action, and a positive declaration on this counterclaim would serve no useful purpose. Accordingly, McKesson respectfully requests that the Court dismiss Count V of the Benzer Parties' Counterclaim.

**IV.    Defendants' Claim for Tortious Interference with a Business Relationship Fails to State a Claim upon which Relief Can be Granted.**

In Count VI, the Benzer Parties allege that McKesson "intentionally and unjustifiably interfere[d] with the Benzer Parties' relationships by limiting the purchases that could be made by the Benzer Parties and, by extension, the Benzer Parties' ability to service their existing

8

123998778.1

customers who had come to rely on the Benzer Parties for pharmaceutical products." (Doc. 16 at ¶ 49).

"To state a claim under Florida law for tortious interference with a business relationship, the plaintiff must establish four elements: (1) the existence of a business relationship between the plaintiff and a third party, (2) the defendant's knowledge of the relationship, (3) the defendant's intentional and unjustified interference with the relationship, and (4) damages resulting from the defendant's interference." *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1301 (M.D. Fla. 2017).  Although a protected business relationship need not be evidenced by a contract, "the business relationship must . . . afford existing or prospective legal rights to the parties and embody an actual and identifiable understanding that the parties will do business together."  *Id.* (internal quotation omitted). "Moreover, it is well-settled that a business's relationship with the general consuming public is not protected; instead the asserted relationship must be with an identifiable customer." *Id*.

Count VI fails on the first element.  With regard to the existence of a business relationship, the Benzer Parties allege merely that McKesson interfered with their ability to serve their existing customers.  (Doc. 16 at ¶ 49).  Because the Benzer Parties' "relationship with the general consuming public is not protected," *Hill Dermaceuticals*, 228 F. Supp. 3d at 1301, and because they fail to identify any particular customer, the Benzer Parties fail to plead the first element of their tortious interference claim, and Count VI must be dismissed in its entirety.

V. **Defendants' Claim for Tortious Interference with Business Expectancy Likewise Fails to State a Claim with Regard to "Customers," Generally**

Although Defendants label Count VII as "tortious interference with business expectancy" rather than "tortious interference with a business relationship," the same elements apply. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (stating the elements of a claim for tortious interference with a business relationship and explaining that the alleged business relationship "must afford the plaintiff existing *or prospective* legal or contractual rights") (emphasis added). The Benzer Parties premise Count VII on several different factual theories, including that McKesson tortiously interfered with Defendants' business relationships "with respect to the Benzer Parties' potential customers, by limiting the credit extended to the Benzer Parties such that they could not continue to serve the same number of new customers as before."[3] (Doc. 16 at ¶ 52).

For the same reasons explained above with regard to Count VI, the Benzer Parties cannot state a claim for tortious interference with "potential customers," just as they cannot state a claim with regard to unidentified "existing customers." *See Hill Dermaceuticals*, 228 F. Supp. 3d at 1301. Thus, McKesson moves to partially dismiss or strike that portion of Count VII purporting to state a tortious interference claim premised on the Benzer Parties' relationship with "potential customers."

---

[3] The Benzer Parties also allege in Count VII that McKesson tortiously interfered with the Benzer Parties' relationship with a "potential lender," a "potential purchaser," and a "potential new supplier." (Doc. 16 at ¶ 52).

123998778.1

## CONCLUSION

For the foregoing reasons, McKesson Corporation respectfully requests that the Court enter an order dismissing Counts II, III, V, and VI of the Benzer Parties' Counterclaim, as well as partially dismissing or striking Count VII to the extent it is premised on the Benzer Parties' relationship with "potential customers," and granting such further relief as this Court deems just and proper.

/s/ Kathleen S. McLeroy
Kathleen S. McLeroy
Florida Bar No. 856819
Caycee D. Hampton
Florida Bar No. 0100922
CARLTON FIELDS, P.A.
Post Office Box 3239
Tampa, Florida 33601-3239
Telephone: 813.223.7000
Facsimile: 813.229.4133
Email:  kmcleroy@carltonfields.com
        champton@carltonfields.com

*Attorneys for Plaintiff*

## CERTIFICATE OF CONFERRAL

To the extent this motion seeks relief under Fed. R. Civ. P. 12(f), which is not exempt from the conferral requirements of Local Rule 3.01(g), counsel for McKesson states that counsel has conferred with counsel for the Benzer Parties, and the Benzer Parties oppose the relief requested herein.

/s/ Kathleen S. McLeroy
Attorney

123998778.1